Jacquelyne A. SMITH, individually and as Administratrix of the Estate of Shenita Renee Smith, deceased, Plaintiff,

v.

LEXINGTON FAYETTE URBAN COUNTY GOVERNMENT, et al., Defendants.

Civ. A. No. 94–109.

United States District Court, E.D. Kentucky, at Lexington.

May 10, 1995.

Judith K. Jones, Miller, Griffin & Marks, Lexington, KY, for Jacquelyne A. Smith, individually, Jacquelyne A. Smith, as Administratrix of the Estate of the deceased Shenita Renee Smith.

Edward W. Gardner, Lexington–Fayette Urban County Government, Michael H. Baker, Gallion, Baker & Bray, Lexington, KY, for Lexington Fayette Urban County Government, Robert Cottone, Thad M. Sullivan, David Hollingsworth and Larry Ousley, individually, and in their official capacity as police officers with the LFUCG Div. of Police.

David W. Mossbrook, Lexington, KY, for Harold Buchignani, in his official capacity.

Joe A. Jarrell, Lexington, KY, for Ed Scrivner.

## MEMORANDUM OPINION

FORESTER, District Judge.

## I. INTRODUCTION

### A. Claims under 42 U.S.C. § 1983

This is a police pursuit case. Plaintiff, Jacquelyne A. Smith, individually and as the

Administratrix of the Estate of Shenita Renee Smith, deceased, brings this action under 42 U.S.C. § 1983, against the Lexington-Fayette Urban County Government ("LFUCG"); Harold Buchignani, in his official capacity as Fayette County Sheriff; Ed Scrivner, individually and in his official capacity as Fayette County Deputy Sheriff; Robert Cottone, Thad M. Sullivan, David Hollingsworth, and Larry Ousley, individually and in their official capacities as LFUCG police officers; and other unknown employees of the LFUCG and Fayette County Sheriff's Office, individually and in their official capacities, alleging that the Defendants violated her decedent's right to liberty and life under the substantive due process clause of the Fourteenth Amendment to the United States Constitution when LFUCG police officers embarked on a high-speed pursuit of a suspected drunken driver, John Renfro, in a downtown residential district on April 3, 1993, that ended when John Renfro's vehicle ran a red light at the intersection of Limestone and Fifth Streets and collided with another vehicle, which was knocked onto the sidewalk where it struck Plaintiff's decedent, fatally injuring her.

Plaintiff also alleges that the LFUCG (1) failed or refused to fully investigate this accident, (2) deliberately and consciously chose to ignore the police officers' alleged misconduct and failure to comply with LFUCG policies, guidelines, and laws, and (3) refused to discipline the Defendant police officers, resulting in de facto policies that exhibit a deliberate indifference to the constitutional rights of third persons.

**B. Pendent state claims**

Plaintiff has state law claims against Fayette County Deputy Sheriff Ed Scrivner and LFUCG police officers Robert Cottone, Thad M. Sullivan, David Hollingsworth, and Larry Ousley, alleging that they were negligent in failing to utilize emergency equipment pursuant to the terms of K.R.S. 189.940, in violation of their duty to exercise due regard for the safety and rights of the public, including Plaintiff's decedent.

Plaintiff seeks compensatory damages of One Million Dollars, punitive damages of One Million Dollars, her costs, and attorney's fees.

This matter is before the Court on the Defendants' motion for summary judgment on Plaintiff's claims filed under 42 U.S.C. § 1983. This motion has been fully briefed and is ripe for review.

**II. FACTUAL BACKGROUND**

On April 3, 1993, at approximately 4:15 p.m., Fayette County Deputy Sheriff Ed Scrivner was off-duty and was driving his personal vehicle, a Ford Explorer, east on Third Street and was stopped for a red traffic light at the intersection of North Limestone Street. When the traffic light turned green, Scrivner observed John Renfro, the driver of a older model, greenish-blue Oldsmobile, squeal his tires, burning rubber for about 30–50 feet, proceeding east on Third Street at a high rate of speed. Besides Renfro, there were two other male passengers in the Renfro vehicle. Scrivner observed Renfro's driving as Renfro approached Race Street and saw Renfro pull across oncoming traffic to a parking space in front of a white building on the northwest corner of Third and Race Streets and stop. Scrivner suspected that Renfro was driving under the influence of intoxicants ("DUI"). (Scrivner Incident Report—Exhibit A to Plaintiff's *Response to Defendants' Motion for Partial Summary Judgment*—DE # 26).

Near the intersection of Race and Third Streets, Scrivner encountered LFUCG police officer Robert Cottone, who was on-duty and in his police cruiser and was westbound on Third Street, and flashed his headlights at Officer Cottone, was able to get his attention, pulled his vehicle up to Cottone's vehicle, and advised Cottone that he suspected Renfro to be DUI. *Id.* In response, Officer Cottone first turned left onto Race Street from Third Street, at which time the Renfro vehicle proceeded north on Race Street. Officer Cottone then turned his vehicle around by backing east on Third Street and proceeded north on Race Street, in pursuit of the Renfro vehicle. Scrivner followed Officer Cottone. *Id.*

Officer Cottone radioed his fellow officers that he had a vehicle running from him. (Cottone Incident Report—Exhibit A to Plaintiff's *Response to Defendants' Motion for Partial Summary Judgment*—DE # 26). During the course of pursuing the Renfro vehicle, Officer Sullivan radioed that he had the Renfro vehicle westbound on Fifth Street from Race Street. Shortly thereafter, Officer Sullivan advised by radio of an automobile collision at the intersection of Fifth and Limestone Streets. *Id.* When Officer Cottone arrived at the accident scene, Officers Sullivan and Ousley had two suspects in custody, and he observed Officer Hollingsworth running after someone, who turned out to be John Renfro. *Id.*

Renfro's vehicle had run the red light at the intersection of Fifth and Limestone Streets and had collided with a vehicle driven by Darren Simms, which was proceeding north on North Limestone with a green light. The impact of Renfro's vehicle with the Simms vehicle knocked the Simms vehicle to the corner where Plaintiff's decedent, Shenita Renee Smith, was standing. The Simms vehicle struck Shenita Smith, fatally injuring her.

After this accident, John Renfro was found to be legally intoxicated, having a blood alcohol content of .12. As a result of the death of Shenita Smith, he was charged and convicted in Fayette Circuit Court of wanton murder and received a thirty-year sentence. *See Commonwealth v. John Renfro,* 93–CR–0318.

## III. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard for summary judgment

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" when it is capable of affecting the outcome of the suit under governing law; a dispute about a "material fact" is "genuine ... if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party. *Vollrath v. Georgia–Pacific Corp.,* 899 F.2d 533, 534–35 (6th Cir.1990).

■ The party moving for summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As indicated above, all facts, as well as all inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ In response to a motion for summary judgment, the nonmoving party cannot rest on its pleadings, but must present some "specific facts showing that there is a genuine issue [of material fact] for trial." *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). "The mere existence of a scintilla of evidence in support of the [non-movant's] ... position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]...." *Id.* at 252, 106 S.Ct. at 2512. In other words, the non-moving party must show that a "rational trier of fact [could] find for the non-moving party ..." or "that there is a *'genuine issue for trial'.*" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (emphasis in original).

### B. Discussion

In support of their motion for summary judgment on Plaintiff's claim under 42 U.S.C.

§ 1983, the Defendants contend that, assuming the truthfulness of Plaintiff's claims concerning the manner in which the police pursuit occurred, the police officers' conduct did not violate Shenita Smith's substantive due process rights under the Fourteenth Amendment because their conduct was not arbitrary, in the constitutional sense, and was not intentionally designed to punish her. The Defendants also submit that even if the actions of the police officers might be construed as a violation of the substantive due process rights of Shenita Smith, the police officers are entitled to qualified immunity.

In opposing the Defendants' motion for summary judgment, Plaintiff argues that while she is not questioning the police officers' decision to pursue an alleged DUI suspect, she questions the manner in which the pursuit was executed, alleging that the police officers failed to utilize their emergency equipment (lights and sirens) during this pursuit, in violation of LFUCG policies, procedures and law, and that the failure to use the emergency equipment represents an arbitrary abuse of police power which shocks the conscience. Plaintiff asserts that as a result of such police misconduct, Shenita Smith was deprived of life and liberty, in violation of her Fourteenth Amendment right to substantive due process.

## C. Analysis

### 1. The § 1983 claim

■ The initial inquiry in any section 1983 action must focus on whether the alleged conduct resulted in the deprivation of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). "Unless a deprivation of some federal constitutional or statutory right has occurred, Section 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 34 F.3d 345, 347 (6th Cir.1994).

In the present action, Plaintiff alleges that the conduct of the LFUCG police officers deprived Shenita Smith of life and liberty without substantive due process in violation of the Fourteenth Amendment. Therefore, it is necessary to view the facts of this action against the standards applicable to substantive due process claims to determine if the police conduct in question rises to the level of a constitutional violation.

### Applicable law

■ The evolution of the standards by which governmental conduct must be measured to determine if a violation of substantive due process has occurred began with *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), where the United States Supreme Court held that conduct that "shocks the conscience" violated substantive due process under the Fourteenth Amendment. However, *Rochin* provided no guidelines as to the type of conduct that would be deemed to be a constitutional violation. However, in companion cases rendered in 1986, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) and *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the United States Supreme Court held that negligent conduct is not a violation of substantive due process because the Fourteenth Amendment protects only against the "affirmative abuse of power," *Daniels*, 474 U.S. at 331, 106 S.Ct. at 665. When one is injured as an incidental and unintended consequence of official action, the abuse of power contemplated in the due process clause is not implicated. *Davidson*, 474 U.S. at 347, 106 S.Ct. at 670. In *Daniels* and *Davidson*, the Court did not address whether conduct that was gross negligence or recklessness would violate the Fourteenth Amendment. *Daniels*, 474 U.S. at 334, n. 3, 106 S.Ct. at 667, n. 3. However, the Supreme Court did recognize that the distinctions among negligence, gross negligence, recklessness, and intentional conduct were not always clear. *Daniels*, 474 U.S. at 335, 106 S.Ct. at 667.

In the absence of specific guidance from the United States Supreme Court as to what types or degree of conduct would violate the Fourteenth Amendment, confusion among

the circuit courts of appeal developed as to what conduct would be actionable under the Fourteenth Amendment. Some circuits required intentional conduct (*Clifton v. Schafer*, 969 F.2d 278 (7th Cir.1992); *Rasmussen v. Larson*, 863 F.2d 603 (8th Cir.1988); *Hannula v. City of Lakewood*, 907 F.2d 129 (10th Cir.1990)), while other circuits required reckless conduct (*Germany v. Vance*, 868 F.2d 9 (1st Cir.1989) or gross negligence (*Woodrum v. Woodward County*, 866 F.2d 1121 (9th Cir.1989); *Taylor ex. rel. Walker v. Ledbetter*, 818 F.2d 791 (11th Cir.1987).

In 1985, prior to *Daniels* and *Davidson*, the Sixth Circuit intimated in *Wilson v. Beebe*, 770 F.2d 578 (6th Cir.1985), that intentional conduct was required to establish a substantive due process violation. Subsequently, in *Nishiyama v. Dickson County*, 814 F.2d 277 (6th Cir.1987), the Sixth Circuit held that an allegation of "gross negligence" was sufficient to charge the defendants with arbitrary use of government power in violation of substantive due process. *Nishiyama* concerned a law enforcement official who permitted a convicted felon unsupervised use of an official vehicle and who failed to take any action against the felon after learning that the felon was using the official vehicle to stop other motorists on the highway. After acknowledging that the term "gross negligence" was not easily defined, the *Nishiyama* court concluded that a person may be said to act in a grossly negligent manner so as to trigger a section 1983 claim "if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, or of a magnitude such that it is highly probable that harm will follow." *Id.* at 282. However, the *Nishiyama* court also referred to the official's conduct as "reckless indifference" stating that "such reckless indifference to the risk posed by their actions is sufficient to establish a violation of substantive due process under Section 1983." *Id.* at 283. Thus, the standard established in *Nishiyama* was a combination of intentional conduct and recklessness subsumed under the heading "gross negligence" with the caveat that such conduct must involve the "arbitrary use of government power." *Id.* at 282.

Five months after *Nishiyama*, the Sixth Circuit had occasion to revisit the *Nishiyama* substantive due process standard in *Jones v. Sherrill*, 827 F.2d 1102 (6th Cir. 1987), a case concerning a police pursuit that culminated in the death of a third party. Specifically, in *Jones*, two police officers pursued a furloughed prisoner for about nine miles from White House, Tennessee, to Millersville, Tennessee. Plaintiff alleged that during the course of the pursuit, the vehicles were driven at speeds of 120–135 miles per hour in traffic and in city limits, and that the police vehicles were following the prisoner's vehicle in a manner too close for safety. The pursuit ended when the prisoner's vehicle crossed the center line of the highway and collided with another vehicle, killing plaintiff's decedent, the driver of that vehicle. Plaintiff, the decedent's widow, filed an action under 42 U.S.C. § 1983 against the sheriff, police officers, and other state officials involved in the decision to furlough the prisoner and in the police pursuit, alleging that the defendants' conduct violated her decedent's Fourth and Fourteenth Amendment rights. Plaintiff's complaint also included pendent state claims for negligence.

The district court granted the defendants' motion to dismiss filed under Fed.R.Civ.P. 12(b)(6), holding that none of the defendants except Sherrill, the prisoner being pursued who collided with plaintiff's decedent, were the proximate cause of the alleged deprivation of the decedent's constitutional rights. The district court also dismissed plaintiff's claims against Sherrill filed under section 1983 without prejudice for lack of subject matter jurisdiction because Sherrill was not acting "under color of state law." Plaintiff appealed the dismissal of the official defendants.

On appeal, the Sixth Circuit reviewed Plaintiff's complaint under the standard announced in *Nishiyama*, 814 F.2d 277 (6th Cir.1987), and concluded that the high-speed pursuit alleged in Jones' complaint did not establish a constitutional violation under the *Nishiyama* standard. Elaborating, the *Jones* court stated:

We considered the issue of high speed pursuit of traffic offenders in *Galas v. McKee,* 801 F.2d 200 (6th Cir.1986), sustaining the use of such pursuit against challenges under the fourth, fourteenth, and eighth amendments and holding that high-speed pursuit is a constitutionally permissible method of apprehending traffic offenders. Although *Galas* was concerned with the constitutional rights of the fleeing offender and not an innocent bystander as in this case, we believe that similar reasoning applies.

As demonstrated in this case, the policies supporting the permissibility of such pursuit incorporate consideration of the known risks to all those who might be involved: officers, offenders, and bystanders. The officers observed a vehicle being driven in an unsafe manner and had been alerted that a similar vehicle had recently been involved in an accident. They quite reasonably attempted to stop the vehicle. When Sherrill refused to stop, the officers pursued him, as they were authorized to do by Tennessee Code Annotated, § 55–8–108(b)(3). Mrs. Jones's allegations concerning the specific conduct of this pursuit might possibly support a negligence claim under state law, but they do not state a claim for a constitutional deprivation of due process. The officers made a choice to protect the public safety by attempting to apprehend an obviously dangerous driver. Although the pursuit ended tragically, the officers may have averted equal or greater tragedy by halting Sherrill when they did rather than allowing him to continue driving. Indeed, had the officers not pursued Sherrill and had his unimpeded progress resulted in a fatal accident, as it well could have, the officers might be facing a different section 1983 claim based on their failure to act, similar to the claim brought in *Nishiyama.*

.   .   .   .   .   .

... This type of pursuit is simply not the kind of outrageous conduct or arbitrary use of government power which can state a section 1983 claim under *Nishiyama.* Accordingly, the district court correctly dismissed the constitutional claims against both sets of official defendants.

827 F.2d at 1106–07.

Concerning the issue of causation, the *Jones* court concluded that the official defendants "were not the proximate cause of Jones's injuries in a constitutional sense." *Id.* at 1107. The proximate cause of Jones's injuries was the suspect's failure to stop, since it was his vehicle that physically harmed Jones.

In 1992, in *Collins v. Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), the United States Supreme Court had occasion to further clarify and define the standard against which substantive due process claims would be measured. The plaintiff in *Collins* was the widow of a city sanitation department worker who died of asphyxiation from sewer gas after he descended in a manhole to work on a clogged sewer line. The defendant, City of Harker Heights, knew of the hazard from the sewer gas, since Mr. Collins' supervisor himself had previously been rendered unconscious from the sewer gas. Plaintiff alleged that the City, through its custom and policy, exhibited deliberate indifference to the safety of its employees by "not training its employees about the dangers of working in sewer lines and manholes, not providing safety equipment at job sites, and not providing safety warnings." *Id.* at 117, 112 S.Ct. at 1064. Plaintiff argued that the City's alleged deliberate indifference was "arbitrary" and "shock[ing to] the conscience." *Id.* at 126, 112 S.Ct. at 1069.

The district court in *Collins* dismissed the action under Fed.R.Civ.P. 12(b)(6), and the dismissal was affirmed by the Fifth Circuit Court of Appeals and by the United States Supreme Court, which held that the acts alleged by the plaintiff in *Collins* could not "properly be characterized as arbitrary, or conscience-shocking in a constitutional sense." *Id.* at 128, 112 S.Ct. at 1070. In *Collins,* the Supreme Court reiterated its reluctance "to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended," *Id.* at 125, 112 S.Ct. at 1068, for the following reason:

... Because the Due Process Clause 'does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society,' *Daniels v. Williams*, 474 U.S., at 332, 106 S.Ct., at 665, we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law (citations omitted).

*Id.* at 128, 112 S.Ct. at 1070.

Subsequent to *Collins*, in *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tennessee, supra,* the Sixth Circuit revisited the due process standard established in *Nishiyama* and recognized that in light of *Collins*, the *Nishiyama* standard was no longer viable. *Lewellen* concerned the construction of a new school and a contractor's employee who was injured on the construction project when he came into contact with a high-voltage conductor. The plaintiff filed suit under 42 U.S.C. § 1983 against the city, county, and board of education, alleging a violation of his substantive due process rights, contending that the defendants were grossly negligent when they deliberately chose to build the school directly beneath high-voltage conductor lines, deliberately delayed removing the power lines, and willfully disregarded the high risk of injury or death faced by the contractor's employees.

The district court granted summary judgment to the defendants, finding that no constitutional violation had occurred. The Sixth Circuit affirmed the summary judgment, holding that "gross negligence is not actionable under Section 1983, because it is 'not arbitrary in a constitutional sense.'" *Id.,* citing *Collins,* 503 U.S. at 129, 112 S.Ct. at 1071. The *Lewellen* court also recognized that after *Collins*, the standard for a substantive due process violation established in *Nishiyama* in 1987 was no longer good law, explaining as follows:

... it seems clear that if *Nishiyama* had come before us after the Supreme Court issued its decision in *Collins v. Harker Heights,* we would have had to use a test other than the one we did use. *Nishiyama's* test of a substantive due process

violation, relying as it does on an explication of the standard for a particular type of 'gross negligence,' simply cannot be reconciled with what the Supreme Court said in *Harker Heights.*

34 F.3d at 350.

Similarly, in *Temkin v. Frederick County Commissioners,* 945 F.2d 716 (4th Cir.1991), a deputy sheriff pursued a fleeing suspect at night at speeds ranging from 65 to 105 miles per hour along a narrow, two-lane highway covering an area of varying population density. At some point during the pursuit, the fleeing suspect failed to negotiate a curve in the road, lost control of the vehicle, crossed over the double yellow line, and struck the on-coming vehicle plaintiff was driving. The deputy sheriff applied his brakes and attempted to avoid the on-coming vehicle; however, the deputy sheriff's vehicle skidded out of control, crossed over the double yellow line, and hit plaintiff's vehicle broadside on the driver's side of the vehicle. As a result of the collision with the deputy sheriff's cruiser, plaintiff suffered severe and permanent injuries.

Subsequently, Plaintiff and her husband filed a claim under 42 U.S.C. § 1983 against the County (the deputy sheriff and the Frederick County Commissioners). Plaintiffs' complaint also included pendent state claims for negligent operation of a motor vehicle, negligent supervision, and loss of consortium. The trial court granted the County's motion for summary judgment on the section 1983 counts and declined to retain jurisdiction over the state claims.

On appeal, the *Temkin* court reviewed the evolution of case law concerning police pursuits and affirmed the summary judgment granted to the County defendants. The *Temkin* court explained:

With the exception of the fact that the instant chase took place at night, the facts here are almost indistinguishable from those found in *Roach* [*v. City of Fredericktown*, 882 F.2d 294 (8th Cir.1989) ], [*Cannon v.*] *Taylor* [782 F.2d 947 (11th Cir. 1986) ], [*Jones v.*] *Sherrill, Walton* [*v. Salter,* 547 F.2d 824 (5th Cir.1976) ]. Indeed, some of the facts in those four cases in-

volved conduct more egregious than that present here. We are thus of the opinion that Selby's conduct, while disturbing and lacking in judgment, falls short of the 'shocks the conscience' standard we adopt today. The district court properly held that Selby's conduct did not rise to the level of a violation of substantive due process cognizable under a section 1983 claim.

945 F.2d at 723.

Likewise, in *Fagan v. City of Vineland*, 22 F.3d 1296 (3rd Cir.1994), a police officer initiated a high-speed pursuit at approximately 1:00 a.m. in a residential neighborhood. During the course of the pursuit, the police officer disregarded traffic signs and signals and violated police department policy by failing to respond to a supervisor's request for an explanation of the pursuit while it was in progress. The pursuit ended when the fleeing suspect ran a red light and collided with a pickup traveling through the intersection, killing the occupants of the pickup.

The trial court granted summary judgment to the defendants on plaintiffs claim under section 1983, and the Third Circuit affirmed on appeal for the following reason:

> In light of the Supreme Court's unanimous adherence to the 'shocks the conscience' test in *Collins*, the reckless indifference of government employees is an insufficient basis upon which to ground their liability for a police pursuit under the Due Process Clause. Such an inquiry is grounded in tort law, not constitutional principles.

*Id.* at 1306–07.

### Analysis

Plaintiff alleges that the police officers initiated a high-speed pursuit of a suspected DUI at close distances, in the city limits where there was vehicular and pedestrian traffic, in disregard of traffic signals, and that the police officers failed to use their emergency equipment, in violation of police department regulations, policy and law. Accepting these allegations as true, these facts are remarkably similar to *Jones v. Sherrill, supra,* where it was alleged that a police officer initiated a high-speed pursuit (120—

135 mph) at close distances of a suspected traffic violator in traffic and in city limits, covering an area of nine miles where other traffic was present. The pursuit ended when the suspect's vehicle crossed the center line of the highway and collided with another vehicle, killing the driver of that vehicle. In *Jones,* the Sixth Circuit held that these facts did not establish a constitutional violation even under the *Nishiyama* "gross negligence" standard in 1987, which required less egregious conduct to establish a substantive due process violation than is currently required, as seen in *Collins v. Harker Heights, supra.*

■ Subsequent to *Collins,* in *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tennessee, supra,* the Sixth Circuit revisited the due process standard established in *Nishiyama* and recognized that in light of *Collins,* the *Nishiyama* standard was no longer viable. To establish a claim under section 1983 for a substantive due process violation, *Collins* requires a plaintiff to show conduct that is more egregious than "gross negligence," conduct that "shocks the conscience," as seen in *Fagan v. City of Vineland, supra.*

Since the police conduct in *Jones,* which is very similar to the present action, was determined not to establish a substantive due process violation under the *Nishiyama* "gross negligence" standard, it is clear that the conduct of the police officers in the present action, which must be measured against a more stringent standard announced in *Collins,* did not rise to the level of a constitutional violation of Shenita Smith's substantive due process rights.

Consequently, the Court concludes that the Defendants are entitled to summary judgment on Plaintiff's claims filed under 42 U.S.C. § 1983. As the Court can discern no constitutional violation, there is no need to consider whether the police officers are entitled to qualified immunity.

### 2. Pendent state claims

■ Plaintiff has state law claims against Fayette County Deputy Sheriff Ed Scrivner and LFUCG police officers Robert Cottone,

Thad M. Sullivan, David Hollingsworth, and Larry Ousley, alleging that they were negligent in failing to utilize emergency equipment pursuant to the terms of K.R.S. 189.940, in violation of their duty to exercise due regard for the safety and rights of the public, including Plaintiff's decedent.

Since the Court has no independent jurisdiction over Plaintiff's pendent state claims, they will be dismissed without prejudice to Plaintiff's right to refile same in state court. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## IV. CONCLUSION

In summary, for the reasons stated above, the Court concludes that the Defendants are entitled to summary judgment on Plaintiff's claims filed under 42 U.S.C. § 1983, and that Plaintiff's pendent state claims should be dismissed without prejudice to her right to refile same in state court.

An Order and Judgment consistent with this Memorandum Opinion will be entered on the same date herewith.

## ORDER AND JUDGMENT

In accordance with the Memorandum Opinion entered on the same date herewith,

**IT IS HEREBY ORDERED and AD-JUDGED that:**

1. The Defendants' motion for summary judgment on Plaintiff's claims filed pursuant to 42 U.S.C. § 1983 [DE # 23] is **GRANT-ED.**

2. The Court having no independent jurisdiction over Plaintiff's pendent state claims that were timely filed as a part of her complaint filed under 42 U.S.C. § 1983, Plaintiff's pendent state claims are **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to refile same in state court. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

3. Pursuant to Fed.R.Civ.P. 54(b), there being no just reason for delay, the summary judgment granted to the Defendants on Plaintiff's claims filed under 42 U.S.C. § 1983

is a **FINAL** and **APPEALABLE** Order and Judgment.