**Susan RADECKI, Individually and as Personal Representative of the Estate of Chester A. Radecki, Deceased, Kristin Radecki, Kerry Radecki, Renee Radecki and Robert Radecki, Plaintiffs,**

v.

**Ron BARELA, Personally and in His Official Capacity, Benjie Montano, Personally and in His Official Capacity, Defendants.**

No. CIV 93–1488 LH/DJS.

United States District Court,
D. New Mexico.

Nov. 15, 1996.

Robert R. Rothstein, Rothstein, Donatelli, Hughes, Dahlstrom, Cron & Schoenburg, Santa Fe, NM, for Plaintiffs.

---

1. An Order vacating the August 3, 1994, Order shall be entered contemporaneously with this

Martin R. Esquivel, Dines, Wilson & Gross, Albuquerque, NM, for Defendant Barela.

Joseph F. Canepa, Brian E. Fitzgerald, Canepa, Vidal, Fitzgerald & Bell, Santa Fe, NM, for Defendant Montano.

## MEMORANDUM OPINION

HANSEN, District Judge.

THIS MATTER comes before the Court on remand from the Tenth Circuit Court of Appeals pursuant to an unpublished Order and Judgment entered by that Court on February 16, 1996. The Order and Judgment ordered this Court to: (1) vacate its August 3, 1994, Order denying Defendant Barela qualified immunity,[1] and (2) consider whether Plaintiff Radecki has alleged conduct or presented genuine issues of material fact as to conduct constituting a constitutional violation under *Uhlrig v. Harder*, 64 F.3d 567 (10th Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996). The Circuit Court also permitted the parties to supplement the record with material bearing on the issue of whether Defendant Barela's alleged conduct "shocks the conscience" of the Court. Having reviewed the simultaneous supplemental memoranda of the parties, and having considered the applicable law in light of *Uhlrig v. Harder*, the Court finds, as explained below, that Defendants' Motion for Partial Summary Judgment based upon their defense of qualified immunity from suit (Docket No. 27) is not well taken and shall be denied.

## BACKGROUND

### I. Procedural Background

Plaintiff Susan Radecki, appearing as personal representative of the Estate of Chester A. Radecki, filed this action against Defendant Barela under 42 U.S.C. § 1983. Plaintiff alleged, *inter alia*, that Defendant Barela violated Mr. Radecki's Fourteenth Amendment right to substantive due process by recklessly creating the dangerous situation that culminated in Mr. Radecki's death.

Memorandum Opinion.

Specifically, Plaintiff alleged that Defendant Barela violated Mr. Radecki's substantive due process rights by increasing Mr. Radecki's vulnerability to harm by a third party when Defendant Barela ordered Mr. Radecki to intervene in the struggle over the gun, surrendered the weapon to a third party, Mr. Martinez, and ran from the scene and hid in the bushes when Mr. Martinez gained control of the weapon.

Defendants filed a joint Motion for Partial Summary Judgment based on qualified immunity. (Docket No. 27). Following a hearing, this Court denied the motion. Defendants appealed, and the Tenth Court rendered its unpublished decision. As I interpret the Tenth Circuit's instructions, I am solely to consider whether Plaintiff Radecki has alleged conduct or presented genuine issues of material fact as to conduct amounting to a constitutional violation under that Court's decision in *Uhlrig v. Harder*, which was decided more than a year after I denied Defendants' Motion for Partial Summary Judgment based on qualified immunity.[2] However, I will also re-address the issue of the status of the law on whether Defendant Barela could be liable under section 1983 to Mr. Radecki for the acts of Mr. Martinez.

## II. Factual Background

I adopt the Tenth Circuit's rendition of the facts. These facts are basically undisputed and are as follows: At approximately 3:00 a.m. on the morning of August 8, 1992, Chester Radecki awoke to the sound of a woman screaming outside his bedroom window in Santa Fe, New Mexico. Mr. Radecki looked out the window and heard more screaming and the sound of someone walking around outside. Shortly thereafter, a law enforcement vehicle arrived nearby with its lights flashing. Mr. Radecki left his home, got into his car, and drove to where Officer Barela, a deputy sheriff, was investigating an incident in which a motorcycle had been driven off Rodeo Road.

A motorcycle lay on the side of the road. Eric Trujillo drove up in a tow truck. Defendant Barela detected a man in the bushes and in the light from his flashlight recognized him as Daniel Martinez. Mr. Martinez staggered out of the bushes. Mr. Martinez, who appeared intoxicated, told Defendant Barela and Mr. Trujillo that his girlfriend had run him off the road, causing him to crash. Defendant Barela began to look around the area for other vehicles or injured persons.

Mr. Radecki arrived, wearing a bathrobe and carrying a flashlight. Mr. Radecki told Defendant Barela that he lived nearby and that he had heard screams, as if a woman were being raped. Defendant Barela and Mr. Radecki explored the scene with their flashlights.

When Defendant Barela shined his flashlight on a car in the bushes, Mr. Martinez tried to grab the officer's nine-millimeter semiautomatic pistol. The two men wrestled for control of the gun. Defendant Barela yelled to Mr. Radecki, "Hit him with your flashlight. Hit him. Get him off me."

It is unclear whether Mr. Radecki hit Mr. Martinez with his flashlight. In response to Defendant Barela's words, however, Mr. Radecki approached the struggling pair. At that point, Mr. Martinez wrestled the gun away from Defendant Barela. Defendant Barela fled to the bushes. Mr. Martinez turned and shot Mr. Radecki in the chest, killing him.

## ANALYSIS

### I. Establishing a Due Process Claim under the "Shock the Conscience" Standard

As noted in the Tenth Circuit's opinion, Plaintiff Radecki has alleged that Defendant Barela violated his Fourteenth Amendment right to substantive due process by recklessly creating a dangerous situation involving Mr. Radecki and then failing to protect Mr. Radecki from a third party resulting in his death.[3] As I read *Hinton v. City of Elwood*,

---

2. As noted above, this Court denied both Defendants' Motion for Partial Summary Judgment based on qualified immunity on August 3, 1994.

*Uhlrig* became the law of this circuit on August 30, 1995.

3. *See also* Plaintiffs' Am. Compl. ¶ 19 (Docket No. 38).

997 F.2d 774 (10th Cir.1993), at this juncture this Court must conduct an analysis to determine whether Plaintiff Radecki has alleged a violation of *existing law* as required by the first prong of Plaintiffs' summary judgment burden. This analysis must necessarily incorporate the Tenth Circuit's reasoning in *Uhlrig v. Harder.* The pertinent law in this area is as follows.

■ The Supreme Court in *DeShaney v. Winnebago County Dep't of Soc. Serv.,* 489 U.S. 189, 197, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), concluded that as a general matter, a state's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause. The Due Process Clause of the Fourteenth Amendment was intended "to protect the people from the State, not to ensure that the State protected them from each other. *Id.* at 196, 109 S.Ct. at 1003.[4] But, the Tenth Circuit in *Medina v. City and County of Denver,* 960 F.2d 1493, 1499 (10th Cir.1992) stated that:

> it cannot be said as a matter of law that a policeman can never be liable for the actions of a suspect, although cases in which liability is imposed will be relatively rare. As detailed earlier in this opinion, an officer might be found liable if a fleeing suspect's conduct is sufficiently predictable and is directly and immediately linked to the officer's conduct and if the officer's decision to pursue or continue to pursue the suspect was unreasonable under the circumstances.

The *Medina* Court concluded that recklessness may give rise to a section 1983 claim based on the Due Process Clause. However, for purposes of section 1983, it is not adequate to show that the defendant merely acted recklessly in disregard of a known risk to the public at large. *Id.* at 1496. Rather, the defendant's conduct must be directed toward the plaintiff. *Id.* The Court noted that the defendant's reckless conduct may be considered to be directed toward the plaintiff if the plaintiff is closely and immediately tied to the perceived substantial risk. *Id.* The Court stated four prerequisites which must be present before reckless conduct can be considered directed toward the plaintiff:

> (1) the plaintiff is a member of a limited and specifically definable group, (2) the defendant's conduct specifically put the members of that group at substantial risk of serious, immediate, and proximate harm, (3) the risk was obvious or known, and (4) the defendant acted recklessly in conscious disregard of that risk.

*Id.* The Court also noted that an act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk, for example "when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death" or grievous bodily injury. *Id.* (citations omitted).

■ In its August 3, 1994, Order, this Court found that Plaintiffs met these four prerequisites. Subsequently, in *Uhlrig,* the Tenth Circuit added a fifth element to the *Medina* test. The fifth element requires that the state's conduct, when viewed in total, shocks the conscience. *Uhlrig,* 64 F.3d at 574. In order for a state to be held liable under section 1983 for creating a danger when someone other than a state actor causes the injury, "a plaintiff must allege a constitutionally cognizable danger" which ultimately rests on reckless or intentionally "injury-causing state action which 'shocks the conscience.' " *Id.* at 572. The *Uhlrig* Court turned to the Supreme Court decision of *Collins v. City of Harker Heights,* 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), for guidance in considering the scope of substantive due process violations. *Id.* at 573 *Uhlrig* cited *Collins* for the proposition that the standard for judging a substantive due process claim is whether the challenged government action would " 'shock the conscience' of federal judges." *Id.* The Court admitted that the level of conduct required to satisfy this additional requirement cannot be precisely defined. It stated:

> [T]o satisfy the "shock the conscience" standard, a plaintiff must do more than show that the government actor intention-

---

4. The Tenth Circuit has interpreted *DeShaney* as carving out two exceptions to this rule: (1) the special relationship doctrine; and (2) the "danger creation" theory. *Uhlrig,* 64 F.3d at 572.

ally or recklessly caused injury to the plaintiff by abusing or misusing government power. That is, the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. The level of conduct required to satisfy this additional requirement cannot precisely be defined, but must necessarily evolve over time from judgments as to the constitutionality of specific government conduct. We do know, however, that the "shock the conscience" standard requires a high level of outrageousness because the Supreme Court has specifically admonished that a substantive due process violation requires more than an ordinary tort and that merely allowing unreasonable risks to persist ... is not necessarily conscience shocking. *Id.* at 574 (citing *Collins,* 503 U.S. at 128, 112 S.Ct. at 1070). *Uhlrig* further stated that it is not enough to show that the state increased the harm of danger from third persons; the plaintiff must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff. *Id.* at 573 (citations omitted).[5]

*Uhlrig* states that to "shock the conscience" means the conduct must involve a degree of outrageousness and a magnitude of potential or actual harm that is truly "conscience shocking." *Id.* at 574 (emphasis added). In other words, it uses the term to define itself, which is circular reasoning. An effort to find guidance as to the meaning of this term in the opinions of other circuit courts is unproductive. In general, it appears that district courts are grappling to apply this amorphous and imprecise standard without meaningful direction. *See Smith v. Lexington Fayette Urban County Gov't,* 884 F.Supp. 1086, 1090 (E.D.Ky.1995) (acknowledging Supreme Court's holding in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) that conduct that "shocks the conscience" violated substantive due process, and noting that "*Rochin* provided no

guidelines as to the type of conduct that would be deemed to be a constitutional violation").

A review of the *Collins* case shows that the "shock the conscience" standard is used interchangeably with "arbitrary." *Collins,* 503 U.S. at 128, 112 S.Ct. at 1070 (city's conduct cannot "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense").[6] I read *Collins* to say that arbitrary behavior is the same as shocking behavior. Arbitrary is defined as despotic and tyrannical. *Black's Law Dictionary* 104 (6th ed.1990). If this definition is used, it would be a better test than the "shock the conscience" standard. This is a more meaningful standard. It is more specific and it satisfies the analysis that *Uhlrig* seems to require.

The "shock the conscience" standard on the other hand is very difficult to apply. It is fundamentally a factual inquiry: how outrageous was the defendant's conduct? Because it is so subjective, its application will change as one federal judge after another struggles to apply it. As noted by Justice Douglas in his concurring opinion in *Rochin v. California,* 342 U.S. 165, 179, 72 S.Ct. 205, 213, 96 L.Ed. 183 (1952), "the rule turn[s] not on the Constitution, but on the idiosyncrasies of the judges who sit here." The unpredictability of this test is compounded by the fact that my best measured (and yet idiosyncratic) judgment as a district judge may be summarily supplanted by the collective consciences and judgments of three (idiosyncratic) Tenth Circuit judges. Unfortunately, this amorphous and subjective standard easily lends itself to result-oriented decisions. *See Abeyta v. Chama Valley Indep. Sch. Dist. No. 19,* 77 F.3d 1253 (10th Cir.1996). The Tenth Circuit, however, requires me to make a determination of whether Defendant Barela's conduct is conscience shocking under *Uhlrig.* The only guidance I found in *Uhlrig* seems to say that Defendant Barela's

---

5. Plaintiffs in their Amended Complaint alleged that "[t]he combined actions of Defendants ... which resulted in the injuries to and the death of Mr. Radecki constituted **outrageous conduct** for persons who are governmental officials or entities ..." (Am.Compl. ¶ 31)

6. For a detailed analysis on the use of these two terms synonymously, see the dissenting opinion of Circuit Judge Cowen in *Fagan v. City of Vineland,* 22 F.3d 1296, 1312 (3rd Cir.1994) (en banc) (Cowen, J., dissenting).

conduct must be of "a high level of outrageousness" coupled with a "magnitude of ... actual harm" that is "truly conscience shocking." *Uhlrig*, 64 F.3d at 574. I proceed to evaluate the facts of this case under this analysis.

■ Defendant Barela, a deputy sheriff trained in law enforcement, commanded the help of Mr. Radecki, a civilian dressed in a bathrobe, to subdue a suspect by telling Mr. Radecki to "hit him. Get him off of me." This command made Mr. Radecki the member of a limited and specifically definable group. Defendant Barela directed Radecki to assist him during his struggle with a third party suspect over his gun. The presence of a loaded deadly weapon specifically put Mr. Radecki at obvious and substantial risk of serious, immediate, and proximate harm, which Defendant Barela must have known. Defendant Barela's instructions for Mr. Radecki to engage in the struggle reflects an "intent to place a person unreasonably at risk of harm." *Uhlrig*, 64 F.3d at 573. Once Mr. Martinez gained possession of the gun, Defendant Barela recklessly acted in conscious disregard of this risk to Mr. Radecki when he abandoned Mr. Radecki and hid in the bushes. There are no facts in the record that Defendant Barela made any efforts to protect Mr. Radecki. Once Defendant Barela fled the scene, the suspect turned and shot Mr. Radecki in the chest, killing him. Mr. Martinez' conduct, once he overcame Defendant Barela, was sufficiently predictable and was directly and immediately linked to Defendant Barela's conduct because Defendant Barela did nothing to prevent the act of violence or to protect Mr. Radecki after commanding Mr. Radecki to hit Mr. Martinez and to get Mr. Martinez off him.

Looking at the conduct of Defendant Barela as a whole, I conclude that his conduct created a special danger to Mr. Radecki, that such conduct was despotic and tyrannical, and therefore, conscience shocking. Defendant Barela's conduct is highly outrageous given the magnitude of harm he placed Mr. Radecki. A police officer has a duty to protect people, not vice versa. No police officer should command a citizen to rescue him from a dangerous situation, thereby putting the

citizen's life at risk, and then abandon the citizen to save himself, thereby sacrificing the citizen to seek safety for himself. This is a factor I have considered in reaching my conclusion in this issue. I believe any enlightened person in a civilized society which employs police protection would reach this conclusion. Therefore, Plaintiffs' allegations rise to the level of substantive due process claim, even under *Uhlrig*, and I conclude, as a matter of law, that Defendant Barela's conduct as a whole shocks the conscience.

## II. Clearly Established Law

On remand, Defendants argue that even if Plaintiffs have alleged a violation of existing law, the alleged conduct did not violate clearly established law of which a reasonable person would have known. Pursuant to *Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993), it is incumbent upon this Court to analyze the law at the time of the alleged conduct in order to determine whether Defendant Barela's conduct, when perpetrated, violated clearly established law.

■ This incident occurred on August 8, 1992. In March of 1992, *Medina* established that a police officer could be liable under section 1983 for an injury caused not by the officer but by the suspect being chased by the officer. In explaining how an officer may be found liable, the *Medina* court cited the language in *Schatz v. Cutler*, 395 F.Supp. 271, 274–75 (D.C.Vt.1975): "[w]here there is likelihood of harm from an intentional. or reckless act of an outsider, the actor who creates the situation of danger may be held responsible for the act of the immediate wrongdoer." 960 F.2d at 1499 (citation omitted) (alteration in original). Furthermore, *Medina* cited three cases that "suggest a police officer or municipality might be liable for the actions of a third party." 960 F.2d at 1499. These cases are *Wood v. Ostrander*, 851 F.2d 1212 (9th Cir.1988), *modified on reh'g*, 879 F.2d 583 (9th Cir.1989), *cert. denied*, 498 U.S. 938, 111 S.Ct. 341, 112 L.Ed.2d 305 (1990); *Nishiyama v. Dickson County.*, 814 F.2d 277 (6th Cir.1987), and *Timko v. City of Hazleton*, 665 F.Supp. 1130 (M.D.Pa.1986). As discussed at length above, there was a high likelihood of harm

from Mr. Martinez. Also, Defendant Barela created a situation of danger when he commanded Mr. Radecki to help him during his struggle over his gun and when he fled the scene without protecting Mr. Radecki after Mr. Martinez obtained control of the gun. I conclude that *Medina* is sufficient law to establish that Defendant Barela could be held responsible for Mr. Martinez' conduct.

## III. Factual Correspondence

Defendants argue that even if the law were clearly established, the facts of this case must substantially correspond to the prior law establishing that Defendant's actions were clearly prohibited, citing to *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995). Defendants state that there is a lack of substantial correspondence in *Medina's* facts of a high speed chase and the facts of this case. (Defs.' Mem. Remand at 21.)

Defendants misplace the level of correspondence necessary to hold Defendant Barela responsible for his actions. "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). In *Medina*, the Tenth Circuit determined that it had to examine whether it was clearly established at the time of the incident "within a sufficiently analogous factual setting" that the particular conduct of the police officers could be grounds for a section 1983 violation. 960 F.2d at 1497. As stated earlier, the *Medina* court referenced *Wood v. Ostrander* in making the statement that "most of the cases suggest a police officer ... might be liable for the actions of a third party." 960 F.2d at 1499. In *Uhlrig*, the Tenth Circuit labeled *Wood* "the classic case of state actors creating a danger so as to give rise to § 1983 liability ..." *Uhlrig*, 64 F.3d at 572. In *Wood*, a state trooper left a woman alone without a car at 2:30 a.m. in a high crime area after he arrested the driver and had the vehicle she was riding in impounded. 879 F.2d at 586. An unknown man from whom she accepted a ride after turning down three or four others raped her. *Id.* The *Wood* court concluded that the trooper involved in the case would not be entitled to qualified immunity if he acted as the woman claims he did. *Id.* at 595. The Tenth Circuit subsequently summarized the essence of the trooper's conduct in *Wood* as the abandonment of a passenger to fend for herself in a dangerous situation. *Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 278 (10th Cir.1996).

The facts of this case are factually analogous to the facts of *Wood*. In each instance, a law enforcement officer abandoned a citizen to fend for him/herself after creating the dangerous situation of dealing with a third party. The 1988 case of *Wood*, cited in 1992 by *Medina*, is sufficiently analogous factually to have placed a reasonable officer in Defendant Barela's position on notice that his command to Mr. Radecki created a danger for Mr. Radecki and his subsequent abandonment of Mr. Radecki, leaving him at the hands of a dangerous suspect, violated Mr. Radecki's constitutional rights.

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment based on qualified immunity (Docket No. 27) shall be denied. Defendants are not entitled to the defense of qualified immunity. An Order in accordance with this Memorandum Opinion shall be entered accordingly.