Janice JONES, Plaintiff-Appellant,

v.

Charles E. SHERRILL, et al.,
Defendants-Appellees.

No. 85–5828.

United States Court of Appeals,
Sixth Circuit.

Argued April 30, 1987.

Decided Sept. 2, 1987.

James L. Charles, Richard M. Riebeling, Susan Emery McGannon, Nashville, Tenn., for defendants-appellees.

Charles E. Sherrill, pro se.

Vance Cramb, Jr. (argued), Sandra F. Jones, Nashville, Tenn., for plaintiff-appellant.

Before ENGEL and BOGGS, Circuit Judges, and HOLSCHUH, District Judge.[*]

BOGGS, Circuit Judge.

This action arose out of a highspeed car chase in which plaintiff's husband, Audie Gaston Jones, was killed. Two police officers of White House, Tennessee, were attempting to apprehend Charles Sherrill, a traffic offender, when Sherrill's car crossed the center line of the highway and collided with Jones's car. Sherrill had been furloughed that day from the Nashville and Davidson County Metropolitan Jail. Janice Jones brought suit under 42 U.S.C. § 1983 against Sherrill and a host of officials and agencies involved in the furlough and chase.[1]

The district court granted defendants' motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., holding that none of the defendants except Sherrill were the proximate cause of the alleged deprivation of constitutional rights. The court also dismissed the action against Sherrill without prejudice for lack of subject matter jurisdiction because Sherrill was not acting "under color of law." Jones appeals the district court's dismissal of the official defendants. We hold that the complaint did not state a claim for violation of any of plaintiff's constitutional rights, and consequently, affirm the district court's dismissal of the complaint.

**I**

A motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint. In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Jones's complaint alleged that Sherrill was incarcerated in the Nashville and Davidson County Metropolitan Jail, under the care of Sheriff Fate Thomas, and that Thomas, the unknown Sheriff's Department employee, and the Metropolitan Government of Nashville and Davidson County allowed Sherrill to be furloughed despite the fact that they knew, or should have known, that Sherrill "had a propensity for criminal, reckless and dangerous conduct, including but not limited to, violence, drinking and driving under the influence." The complaint further alleges that while on furlough, Sherrill obtained an automobile despite his license being revoked, and proceeded to operate that automobile while under the influence of alcohol. The automobile was reported by police bulletin to have been involved in a property damage accident.

The complaint alleges that shortly before the fatal accident, Officers Spain and Gibson spotted a car which resembled the reported vehicle and was being driven in an unsafe manner. The officers tried to stop the driver of this vehicle, which turned out

---

[*] The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

[1] The official defendants are Leland F. Spain and Thomas E. Gipson, the police officers involved in the chase; Morris Fisher, Police Chief/Safety Director of White House; Billy Hobbs, Mayor of White House; the City of White House; Fate Thomas, Sheriff of Nashville and Davidson County; an unknown employee of the Sheriff's Department responsible for furloughing Sherrill; and the Metropolitan Government of Nashville and Davidson County.

to be Sherrill, but he fled. The officers pursued Sherrill about nine miles from White House to Millersville. Plaintiff alleges that in the course of the pursuit, the vehicles were driven at speeds of 120–135 miles per hour in traffic and in city limits, and that the chasing police cars were following in a manner too close for safety. The complaint alleges that Police Chief Fisher was in radio contact with the officers and was following them on the chase route in his own vehicle. Finally, the complaint alleges that as a result of the pursuit, Sherrill's car crossed the center line of the highway and collided with Jones's car, causing Jones's death.

Plaintiff asserts that the officers operated their vehicles "in a negligent, careless and wanton manner and with reckless disregard for the public" and that their pursuit of Sherrill was a proximate cause of Jones's death, "in violation of his rights under the laws and Constitution of the United States." The complaint further alleges that the failure of the defendants, City of White House, Mayor Hobbs, and Police Chief Fisher, to provide adequate training and supervision regarding the pursuit of suspects amounted to gross negligence and deliberate indifference to the public safety. The complaint also alleges that the failure of the defendants, Metropolitan Government of Nashville and Sheriff Fate Thomas, to provide adequate training and supervision regarding furlough of prisoners amounted to gross negligence and deliberate indifference. Plaintiff asserts that this gross negligence was a proximate cause of Jones's death.

## II

■ In order to sustain a claim under section 1983, Jones must demonstrate that: 1) the defendants acted under color of state law; 2) the conduct caused a deprivation of constitutional rights; and 3) the deprivation occurred without due process of law. *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir.1987) (en banc). In applying this test to Jones's complaint, we consider separately Jones's claims against the two sets of defendants. We will first consider the liability of Sheriff Thomas and Nashville and Davidson Coun-

ty for the decision to furlough Sherrill, and then consider the liability of the police officers, police chief and mayor for the pursuit and subsequent accident.

Jones does not have a problem meeting the first prong of this test against either set of defendants. Both the decision of the sheriff's department to furlough Sherrill and the decision of the police officers to pursue Sherrill's vehicle when he refused to stop were actions taken by state officials under color of state law. Jones still must show, however, that the conduct of one or more of the defendants caused a deprivation of her husband's constitutional rights and that this deprivation occurred without due process of law.

■ Neither Jones's pleadings before the district court nor her briefs before this court indicate precisely what constitutional rights are claimed to have been violated by the state in this case. Her brief makes reference to *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), which held that the use of deadly force to apprehend an unarmed fleeing felon was an unreasonable seizure which violated the fourth amendment. This circuit has held, however, that a high-speed pursuit of a traffic offender which terminates in an accident does not constitute a seizure of the offender because no physical force or show of authority on the part of the officer caused the restraint on the offender's liberty. *Galas v. McKee*, 801 F.2d 200, 202–03 (6th Cir.1986); *Cf. Cameron v. City of Pontiac, Michigan*, 813 F.2d 782, 785 (6th Cir.1987) (suspect killed by fleeing onto highway not seized by pursuing officers). It is clear, therefore, that Sherrill could not challenge the officers' conduct as violative of the fourth amendment, as his choosing to flee, rather than the officers' pursuit, caused the restraint on his liberty occasioned by the accident. *See Galas*, 801 F.2d at 203; *Cameron*, 813 F.2d at 785. Whether Jones, the innocent bystander, may challenge the officers' pursuit as an unreasonable seizure presents a slightly different question. We hold, however, that similar reasoning applies, and that the officers' pursuit cannot constitute a seizure of

Jones any more than it could of Sherrill. The officers were intending to apprehend Sherrill, not Jones. The restraint on Jones's liberty was caused by the accident with Sherrill and not by any physical force or show of authority on the part of the officers. There was no fourth amendment violation.

█ Jones, however, was killed in the accident, and his right to life is one of constitutional dimension. While Jones is not constitutionally guaranteed life, he is protected by the fourteenth amendment from being deprived of his life by the state without due process of law. *See Nishiyama*, 814 F.2d at 280. We will consider, therefore, whether the officers' conduct in pursuing Sherrill and the Sheriff's department decision to furlough Sherrill deprived Jones of his life without due process of law.

█ We consider first whether the actions of the sheriff's department in furloughing Sherrill deprived Jones of his life in violation of the fourteenth amendment. This inquiry must start with the Supreme Court's decision in *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), holding that the parole board could not be held liable under section 1983 for a murder committed by a parolee. We followed *Martinez* in *Janan v. Trammell*, 785 F.2d 557 (6th Cir.1986), holding that a murder committed by a parolee was too remote a consequence of the parole board's decision to release the parolee to state a claim under section 1983. Similarly, we hold that Jones's death in the accident was too remote a consequence of the Sheriff's department's decision to furlough Sherrill to state a claim under section 1983. It makes no difference that the accident occurred on the same day that Sherrill was furloughed or that Sherrill's freedom was the result of a temporary furlough rather than parole. In *Carlson v. Conklin*, 813 F.2d 769 (6th Cir. 1987), we held that state correctional officers could not be held liable for assaults committed by inmates placed in half-way houses. We held that "[t]he fact that Conklin had been placed in a half-way house rather than paroled does not distinguish this case from *Martinez*." *Id.* at

772. We continued to adhere to the reasoning of *Janan v. Trammell:*

> [T]he proper analysis is whether a special relationship exists between the criminal and the victim or between the victim and the state or whether there is some showing that the victim, as distinguished from the public at large, faces a special danger by the parolee's release. In so holding, we follow other circuits that have held that absent a special relationship between the criminal and the victim or the victim and the state, no due process violation can occur.

785 F.2d at 560. Since there was no special relationship between Sherrill and Jones or between Jones and the state, Jones's death in the accident was too remote a consequence of the state's decision to furlough Sherrill to state a section 1983 claim.

This result is not altered by our recent decision in *Nishiyama*, 814 F.2d 277, holding that an injured party could, under some circumstances, state a claim against state officials under section 1983 for a murder committed by a jail inmate enjoying unsupervised "trusty" status. We held that the parents of Kathy Nishiyama stated a section 1983 claim for violation of substantive due process in their complaint alleging that Kathy was murdered by a jail trusty using the authority of a marked sheriff's department patrol car to require her to stop. We held that the sheriff's department's alleged policy of allowing trusties unsupervised use of patrol cars for their private purposes distinguished *Nishiyama* from *Martinez* and *Janan*. This policy of allowing inmates use of official patrol cars as well as the fact that the officials failed to act to stop the inmate after learning that he was using the car to stop vehicles created the direct connection between the official action and the murder that was missing in *Martinez*. *Nishiyama* is not applicable to this case as there is no such direct connection between the decision to furlough Sherrill and the subsequent accident. This case fits squarely within the precedent of *Martinez* and *Janan*. The accident was simply too remote a consequence of the decision to furlough Sherrill to state a claim against the sheriff's department.

We now turn to the liability of the police for the high-speed pursuit leading to the accident. To state a section 1983 claim against these defendants, Mrs. Jones must plead facts showing that the acts of the police officers deprived her husband of his life without due process of law. The complaint pled that the officers were guilty of "aggravated negligence" by conducting the high-speed pursuit of Sherrill at speeds up to 120–135 miles an hour through populated areas. Mrs. Jones asserts that the officers operated their vehicles "in a negligent, careless and wanton manner and with reckless disregard for the public" and that her husband was killed as a "direct and proximate result of the above described willful, wanton, reckless and malicious acts."

■ The Supreme Court has held that mere negligence on the part of state officials cannot state a claim for a due process violation under section 1983, stating that due process "is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) (emphasis in original). The Court, however, specifically declined to consider the question "whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protection of the Due Process Clause." *Id.* 106 S.Ct. at 667 n. 3.

We considered this question in *Nishiyama,* 814 F.2d 277. We held that the facts alleged to support the claim of "gross negligence" in that complaint were sufficient to withstand a motion to dismiss, stating that "the allegation in the present complaint of gross negligence on the part of the defendants was sufficient to charge them with arbitrary use of government power." *Id.* at 282. We acknowledged that "gross negligence" was not a simple standard to define, but stated that "a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." *Id.* at 282. We held that the conscious

policy of permitting trusties unsupervised use of fully equipped patrol cars with seeming indifference to the high probability of risk to motorists and the official inaction after being notified of the trusty's misconduct was not simple negligence or carelessness but was the kind of outrageous government conduct intended to be reached under section 1983.

■ The government conduct in pursuing Sherrill does not rise to the level of gross negligence and outrageous conduct necessary to sustain a section 1983 claim under *Nishiyama. Nishiyama* did not hold that a mere allegation of gross negligence or aggravated negligence would always be enough to withstand a motion to dismiss. Negligence does not become "gross" just by saying so. If the courts are to make any sense of the distinction between gross negligence and simple negligence, we must ensure that gross negligence is something more than simple negligence "with the addition of a vituperative epithet." *Wilson v. Brett,* 11 M. & W. 113, 152 Eng.Rep. 737 (Ex. 1843). The facts alleged in support of the legal conclusion of gross negligence must be sufficient to charge the government officials with outrageous conduct or arbitrary use of government power. The high speed pursuit alleged in Jones's complaint is not sufficient to state a claim under *Nishiyama.*

We considered the issue of high speed pursuit of traffic offenders in *Galas v. McKee,* 801 F.2d 200 (6th Cir.1987), sustaining the use of such pursuit against challenges under the fourth, fourteenth, and eighth amendments and holding that high-speed pursuit is a constitutionally permissible method of apprehending traffic offenders. Although *Galas* was concerned with the constitutional rights of the fleeing offender and not an innocent bystander as in this case, we believe that similar reasoning applies.

As demonstrated in this case, the policies supporting the permissibility of such pursuit incorporate consideration of the known risks to all those who might be involved; officers, offenders, and bystanders. The officers observed a vehicle being driven in

an unsafe manner and had been alerted that a similar vehicle had recently been involved in an accident. They quite reasonably attempted to stop the vehicle. When Sherrill refused to stop, the officers pursued him, as they were authorized to do by Tennessee Code Annotated, § 55–8–108(b)(3). Mrs. Jones's allegations concerning the specific conduct of this pursuit might possibly support a negligence claim under state law, but they do not state a claim for a constitutional deprivation of due process. The officers made a choice to protect the public safety by attempting to apprehend an obviously dangerous driver. Although the pursuit ended tragically, the officers may have averted equal or greater tragedy by halting Sherrill when they did rather than allowing him to continue driving. Indeed, had the officers not pursued Sherrill and had his unimpeded progress resulted in a fatal accident, as it well could have, the officers might be facing a different section 1983 claim based on their failure to act, similar to the claim brought in *Nishiyama.*

The court in *Nishiyama* emphasized the defendants' knowledge of the unnecessary risk created by their policy of allowing convicted felons unsupervised use of marked patrol cars, and stressed that "[t]he wanton disregard [of this risk] ... amounted to more than mere thoughtlessness." 814 F.2d at 282. The court considered the defendants' behavior outrageous because they "consciously and voluntarily failed to respond to the danger," even after being informed that the trusty was using the car to stop motorists, stating that "such reckless indifference to the risk posed by their actions is sufficient to establish a violation of substantive due process under section 1983." *Id.* at 283.

The policy of pursuing fleeing offenders at issue in this case does not involve the kind of "wanton disregard" or "reckless indifference" to risk condemned in *Nishiyama.* The complaint does not allege that the police officers were engaged in a reckless and dangerous joy-ride for no good reason. The officers observed a car being driven in a dangerous manner. They had reason to believe that this car had been involved in an earlier accident. The driver

did not stop when requested to do so. Rather than allowing the car to continue, possibly causing more harm, the officers followed a policy of pursuing the vehicle at the speed necessary to apprehend it. This type of pursuit is simply not the kind of outrageous conduct or arbitrary use of government power which can state a section 1983 claim under *Nishiyama.* Accordingly, the district court correctly dismissed the constitutional claims against both sets of official defendants.

We find it necessary, however, to clarify the district court's opinion in one respect. In dismissing the claims, the court stated "that the actions of each defendant, except Charles L. Sherrill, were not the proximate cause of the alleged deprivation of constitutional rights." As our opinion makes clear, this must be taken to mean that the official defendants were not the proximate cause of Jones's injuries in a constitutional sense. We make no intimation that the state officials could not be held to be the proximate cause of Jones's injuries in an ordinary negligence action under state law. That is a matter best left to the Tennessee courts. Accordingly, our affirmance of the district court's holding that the official defendants were not the proximate cause of any deprivation of Jones's constitutional rights should not have any *res judicata* effect in an ordinary tort action against these same defendants in state court. We hold simply that Jones has not stated a constitutional claim under section 1983.

The opinion of the district court dismissing Jones's action is AFFIRMED.