27 F.3d 567
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jerry R. SPEARS, Administrator of the Estate of Joseph R.
Spears, Deceased, Plaintiff-Appellant,
v.
CITY OF LOUISVILLE; Douglas Hamilton, Chief of Police;
Officers James Embry, Rhonda Bott, Larry Cape,
Doug Foland, Defendants-Appellees.
 No. 93-5921.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1994.
 
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this case, the plaintiff appeals the district court's grant of summary judgment to the defendants in his law suit brought under 42 U.S.C. Sec. 1983, alleging violations of the Fourth and Fourteenth Amendments. The case arose out of a motorcycle's high-speed flight from pursuing police, which flight ultimately ended in the death of the plaintiff's son, a passenger on the motorcycle, when the motorcycle collided with a truck. Because we find this case materially indistinguishable from our prior Sec. 1983 police chase cases, we affirm.
 
 
 2
 * The relevant facts are not in dispute. On July 25, 1991, at 5:27 a.m., in Louisville, Kentucky, defendant Officer James Embry saw a motorcycle with a broken tail light and with a passenger who was not wearing a helmet. Michael Pound was driving the motorcycle, and Joseph Spear, the plaintiff's decedent son, was the passenger. Embry turned on his police lights to pull the motorcycle over; he called police dispatch and relayed the license plate number. The motorcycle pulled over to the curb, but as Embry got out of his police car, the motorcycle sped away, disregarding traffic signals. Embry got back into his car, again called police dispatch, and began pursuing the motorcycle. The dispatcher notified Embry that the motorcycle might be stolen.
 
 
 3
 Embry pursued the motorcycle through the streets of Louisville and was soon joined by defendant Officers Rhonda Bott and Doug Foland. None of the police cars ever had any physical contact with the motorcycle. At one point, Embry was able to pull alongside the motorcycle, and Embry inferred from Spears's facial expressions and hand gestures that he was along for the ride against his preference. Another officer, defendant Larry Cape, set up a road block with his police car. The motorcycle approached the road block, slowed, cut across a parking lot, and continued to flee. Embry was unable to follow, and he radioed dispatch that he was no longer in pursuit.
 
 
 4
 Shortly thereafter and some two miles beyond the road block, the motorcycle collided with a truck, killing Spears but not Pound. Apparently none of the officers saw the crash. All the police cars involved were marked cars, with lights and sirens. The weather conditions were clear, and there was no traffic congestion at the time of the chase, which reached speeds of up to 80 m.p.h. Pound was charged with receiving stolen property and manslaughter; he pleaded guilty to manslaughter and to theft.
 
 
 5
 The plaintiff's complaint alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments under Sec. 1983, as well as state tort claims of negligent training and supervision and wrongful death. After removing the case to federal court, the defendants sought summary judgment, under Fed.R.Civ.P. 56, on the Sec. 1983 claims on the grounds that the complaint failed to state a claim upon which relief could be granted and that defendants were entitled to qualified immunity.
 
 
 6
 The district court concluded that there were "no facts present in this case to implicate a violation of Spears'[s] first, fifth and/or eighth amendment rights." As to the remaining constitutional claims, the district court determined that high-speed police chases, "by their nature, cannot rise to the level of a 'seizure' under the fourth amendment." Further, even if the chase were a seizure, it was not "unreasonable" for the police to pursue fleeing traffic violators. As to the Fourteenth Amendment claim, the district court, citing Jones v. Sherrill, 827 F.2d 1102 (6th Cir.1987), noted that the Sixth Circuit had rejected the notion that a high-speed chase implicates the Fourteenth Amendment. Because the officers violated no clearly established constitutional right, they were entitled to qualified immunity. Finally, because there was no constitutional violation here, there was no basis for liability against the city or the police chief.
 
 
 7
 The plaintiff later moved to alter, amend, or vacate the judgment, but the district court overruled the motion, and also dismissed without prejudice the remaining state law claims. In his appeal, the plaintiff does not contest the dismissal of his First, Fifth, and Eighth Amendment claims, nor the dismissal of his state law claims.
 
 II
 
 8
 We review the granting of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Because the material facts of this case are not in dispute, a decision may be made as a matter of law.
 
 
 9
 Under Sec. 1983, a person who, under color of state law, subjects another person to a deprivation of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States, is liable to the party so injured. 42 U.S.C. Sec. 1983. In order to sustain a claim under Sec. 1983, the plaintiff must show that (1) the defendants acted under color of state law, (2) the conduct caused a deprivation of constitutional rights, and (3) the deprivation occurred without due process of law. Jones v. Sherrill, 827 F.2d 1102, 1104 (6th Cir.1987) (citing Nishiyama v. Dickson County, Tenn., 814 F.2d 277, 279 (6th Cir.1987) (en banc)). Because the plaintiff cannot establish that the conduct of the defendants caused a deprivation of Joseph Spears's Fourth and Fourteenth Amendment rights, the defendants are not liable under Sec. 1983.
 
 
 10
 In Galas v. McKee, 801 F.2d 200 (6th Cir.1986), we concluded that neither a high-speed pursuit of a speeding car by a police car, nor the transportation of the speeding driver to the hospital after he crashed his car, constituted a seizure under the Fourth Amendment. In the initial stages of the pursuit, the speeding motorist was not restrained at all, and during the latter stages (after he had crashed), he was not free to walk away only because of his disregard of the police officer's instruction to stop, not because of the officer's show of authority. 801 F.2d at 203. Further, a high-speed pursuit by police officers is not an unreasonable method of seizing traffic offenders because there is only a minimal intrusion and show of force. Ibid. See also Jones, 827 F.2d at 1104 (high-speed pursuit of a traffic offender that terminates in an accident does not constitute a seizure of the offender because no physical force or show of authority on the part of the officer caused the restraint on the offender's liberty); Cameron v. City of Pontiac, Mich., 813 F.2d 782, 785-86 (6th Cir.1987) (pursuit of fleeing burglary suspect resulting in suspect's death when he tried to cross a busy expressway neither a seizure nor the proximate cause of his death).
 
 
 11
 In Galas, we also rejected the plaintiffs' Fourteenth Amendment claim that the policy of allowing pursuit of traffic offenders infringed on the right to life. 801 F.2d at 205. Jones also considered the question of whether the allegation of a high-speed chase was sufficient to state a claim under Sec. 1983 for violation of due process of law (i.e., whether such a pursuit is the kind of outrageous conduct or arbitrary use of government power that can state a Sec. 1983 claim), and held that it did not. 827 F.2d at 1106-07. In Jones, the police pursued a fleeing furloughed prisoner who had been seen speeding; the plaintiff was the widow of the decedent who was killed when the fleeing prisoner's car crossed the center-line of the road and collided with the decedent's car. The "policy of pursuing fleeing offenders ... does not involve the kind of 'wanton disregard' or 'reckless indifference' to risk condemned in Nishiyama." Id. at 1107. Nishiyama held that, to state a claim against state officials for a due process violation under Sec. 1983, a plaintiff must show that the officials acted unreasonably and intentionally with disregard of a known risk. 814 F.2d at 282. The county sheriff's practice of providing marked and fully-equipped police cars to inmates for their unsupervised use, and the sheriff's reckless indifference to the risks posed by such a practice (e.g., by failing to investigate or recall one of the inmates when notified that a patrol car was stopping motorists in another county), amounted to circumstances actionable under Sec. 1983. Ibid.
 
 
 12
 Because there is no material difference between a fleeing car and a fleeing motorcycle, Jones and Galas are dispositive of this case. Here, as in those cases, there was no "unreasonable seizure" and thus no Fourth Amendment violation to sustain a Sec. 1983 claim. There was never any contact between the pursuing police cars and the motorcycle, nor did the roadblock or pursuit stop the motorcycle or affect the ultimate crash, which occurred after the motorcycle had eluded the pursuing police. These facts distinguish this case from the several cases that might offer some support for the plaintiff's position (cases, incidentally, of dubious precedential value, given our holdings in Jones and Galas ). See, e.g., Kuhar v. Hanton, No. 86-4110, 1988 WL 923 (6th Cir. Jan. 8, 1988) (unpublished); Frye v. Town of Akron, 759 F.Supp. 1320 (N.D.Ind.1991); Reed v. County of Allegan, 688 F.Supp. 1239 (W.D.Mich.1988); Easterling v. City of Glennville, 694 F.Supp. 911 (S.D.Ga.1986).
 
 
 13
 The plaintiff also alleges that the defendant police officers violated police department rules by engaging in a high-speed pursuit for what he alleges was only a non-hazardous misdemeanor, and thus the plaintiff concludes that Joseph Spears was deprived of his life without due process of law. However, the Jones and Galas analyses clearly indicate that pursuit in a situation such as this one does not deprive a fleeing motorist of constitutional rights. Further, although the plaintiff alleges that the behavior of the pursuing officers amounted to "gross negligence" (and thus, he says, supports a claim under Nishiyama ), Jones precludes such a claim. Jones concluded that a police pursuit of a traffic offender was reasonable, not rising to the level of gross negligence. 827 F.2d at 1106. Here, as in Jones, the behavior of the officers is simply not analogous to the conduct condemned in Nishiyama. Summary judgment for the defendants on the plaintiff's Fourth and Fourteenth Amendment claims was proper and, indeed, mandated by our precedents.
 
 
 14
 The plaintiff also asserts that Louisville failed to train its police officers adequately and that the alleged failure caused the death of Joseph Spears. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989), requires that, for inadequate police training to serve as the basis for Sec. 1983 municipal liability, the alleged failure to train must amount to a deliberate indifference to the rights of persons with whom the police come into contact. Furthermore, there must be a constitutional violation for there to be Sec. 1983 municipal liability. 489 U.S. at 385, 109 S.Ct. at 1203; see also City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573 (1986) (per curiam) (no municipal liability under Sec. 1983 if no "constitutional harm"). Because there was no deprivation of constitutional rights here, there is no basis for liability under Sec. 1983, municipal or otherwise. Whether Louisville had an "informal" policy of permitting its police officers to engage in high-speed pursuits for non-hazardous misdemeanors is irrelevant to the question of whether there was a deprivation of constitutional rights, a prerequisite to the imposition of Sec. 1983 liability.[1]
 
 III
 
 15
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The plaintiff requested, in discovery, from the defendants, documents relating to the police department's policy, custom, or usage of high-speed pursuits; such documents would likewise be irrelevant where there is no deprivation of constitutional rights