**GAMES GALORE OF OHIO, INC., Plaintiff,**

v.

**Christopher MASMINSTER, et al., Defendants.**

**No. C–1–00–696.**

United States District Court, S.D. Ohio, Western Division.

July 3, 2001.

Gregory Reynolds Wilson, Kenneth Grant Hawley, Cincinnati, OH, for Games Galore of Ohio Inc, plaintiffs.

Konrad Kircher, Cincinnati, Jeffrey Charles Turner, Jenks, Surdyk & Cowdrey, Dayton, Richard Ganulin, Assistant City Solicitor, Alan C Triggs, City of Cincinnati, Department of Law, Cincinnati, OH, for Christopher Masminster, in his personal and official capacities, Colerain Township, Cincinnati City of, defendants.

## ORDER

SPIEGEL, Senior District Judge.

This Matter is before the Court on Defendant City of Cincinnati's Motion for Judgment on the Pleadings (doc. 9); Plaintiff's Response (doc. 13); and Defendant City of Cincinnati's Reply (doc. 14).

## BACKGROUND

### A. *Introduction*

On August 25, 2000, Plaintiff Games Galore of Ohio, Inc. filed suit against Defendants Christopher Masminster, Colerain

Township, and the City of Cincinnati alleging that Defendants violated its federal civil rights and converted or "conspired to convert" certain corporate assets in violation of state common law (*see* doc. 1). *See* Title 42 U.S.C. § 1983. Specifically, this action arises out of the allegedly unlawful conversion of all of the corporate inventory and business assets of Plaintiff Games Galore during the night hours of August 25, 1998, "by individuals named Raymond and Carolyn Becker, with the alleged knowledge, complicity, and active assistance of, and under color of law provided by, defendants Masminster, Colerain Township and [the] City of Cincinnati" (*Id.*).

All of the named Defendants to this suit have filed separate Answers asserting general denials of Plaintiff's claims of civil rights abuse and conversion (*see* docs. 2, 5 & 6). In addition, Defendant City of Cincinnati filed a Motion for Judgment on the Pleadings moving for this Court to dismiss the Plaintiff's claims asserted against the Defendant City of Cincinnati in its Complaint (*see* doc. 9). *See also* Fed.R.Civ.P. 12(c).

In its Complaint, Plaintiff asserts that it is bringing this action for deprivation of its "Constitutionally-protected property rights by the defendants under color of state law, pursuant to 42 U.S.C. § 1983, and for conversion, pursuant to the common law of the State of Ohio" (*see* doc. 1). This Court has subject matter jurisdiction over Plaintiff's Constitutional and federal law claims, pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a) (*Id.*).

The following facts are based on the allegations in Plaintiff's Complaint (*Id.*). On a motion for judgment on the pleadings, as well as a motion to dismiss, this Court is required to accept all of Plaintiff's allegations as true. *See* Fed.R.Civ.P. 12(b)(6) & (c); *see also Mixon v. Ohio*, 193 F.3d 389, 399–400 (6th Cir.1999).

### B. *Factual History*

Plaintiff Games Galore of Ohio, Inc. is an Ohio corporation, which formerly did business at 7000 Vine Street in Cincinnati, Ohio under the trade name of "Games Galore." Defendant Christopher Masminster is, and was at all times material to the Complaint, a police officer employed by the Colerain Township Police Department. Defendant Colerain Township is a political and municipal "person" with the capacity to sue and be sued under Ohio Rev.Code § 503.01. Defendant City of Cincinnati is a political and municipal "person" with the power to sue and be sued under Ohio Rev.Code § 715.01. Raymond C. Becker, Jr. and Carolyn Becker had been officers, directors, and shareholders of the Plaintiff-corporation, but are not presently listed as Parties to this action (*see* doc. 1).

Sometime during the night hours of August 25, 1998, Raymond and Carolyn Becker, Colerain Township Police Officer Masminster, and other unnamed persons appeared at the business location of Games Galore with several trucks and vehicles. Raymond Becker allegedly advised the landlord of the corporation's premises that he was acting to prevent a "hostile takeover" of the Plaintiff-corporation, and requested that the landlord let them onto the premises in order to remove the inventory and assets of Games Galore. Officer Masminster allegedly wore his gun and displayed his police badge to the landlord in an effort to ensure that the landlord would allow the Beckers entry onto the Games Galore premises.

Prior to their actually removing any inventory and assets from the Games Galore premises, Officer Masminster allegedly advised certain unnamed police officers employed by the City of Cincinnati Police

Department by telephone that the Beckers owned 51% of Games Galore, and that he and the Beckers were acting to prevent a hostile takeover of Games Galore. Officer Masminster also allegedly warned the Cincinnati police officers that other persons claiming to be corporate officers, shareholders, and/or directors of Games Galore might call in an effort to complain of or prevent the removal of the corporation's inventory and assets. Nonetheless, Officer Masminster allegedly advised the Cincinnati police officers that, since the Beckers owned 51% of Games Galore, the Beckers were entitled to remove the corporation's inventory and assets, and the officers should ignore any complaints by the corporation's other officers and shareholders, since there was no criminal activity taking place.

While the Beckers, Officer Masminster and others were removing the corporation's inventory and assets, the landlord of the premises called Games Galore's unnamed manager and advised him of what was happening at that time. The landlord allegedly explained to the corporate manager that, since Raymond Becker's name was on the lease and was accompanied by Officer Masminster, he had no choice but to allow the Beckers and Officer Masminster into the premises. The landlord also allegedly said that he believed that something about the situation wasn't right and thought the other corporate officers, shareholders, and directors should know what the Beckers were attempting to do.

The corporate manager contacted the unnamed chairman and principal officer of Games Galore, who immediately telephoned the Cincinnati Police Department to advise of a burglary and theft in progress, then went to the corporate premises to investigate the situation himself. The corporate chairman arrived at the premises to allegedly find that the corporation's entire inventory and assets had been re-moved, and that Raymond Becker had allegedly left a note on the door stating that Games Galore was closed and had gone out of business.

While the corporate chairman was at the premises, Officer Ruff of the Cincinnati Police Department had arrived at the site as well. Officer Ruff allegedly refused to investigate the matter, refused to accept the chairman's charges of criminal theft against Raymond Becker, and refused to take any action upon the chairman's complaint. Instead, Officer Ruff allegedly said that she "already knew the whole story" about the Beckers owning 51% of the business and were acting to prevent a "hostile takeover," and that, as such, the Beckers were entitled to do what they did. Officer Ruff allegedly also confirmed to the corporate chairman that the Cincinnati Police Department had been warned in advance by Officer Masminster by means of a telephone call that other corporate officers, shareholders, or directors of Games Galore would likely call to complain, and that since the Beckers owned a majority of the corporation, any such complaints by other corporate officers, shareholders, or directors should be ignored.

The corporate chairman then went to the City of Cincinnati's District 4 Police Station in order to personally file criminal charges against the Beckers, but again, the desk officers at the Station allegedly refused to accept his criminal complaint against the Beckers. The police officers on duty at District 4 allegedly informed the corporate chairman that they too "knew the whole story" concerning the Beckers, and that there was nothing the Cincinnati Police Department could do about it as well. The Complaint further asserts that, "[b]ecause the City of Cincinnati failed and refused to accept or investigate the plaintiff's proffered criminal charges, the Beckers were able to remove

the plaintiff's inventory and assets from the place where they initially stored it, and disposed of it for their own use and benefit" (doc. 1).

## C. *Procedural History*

Thereafter, Games Galore filed suit against Raymond and Carolyn Becker in the Hamilton County Court of Common Pleas, Ohio, in the case captioned as *Games Galore of Ohio, Inc., et al. v. Raymond C. Becker, Jr., et al.*, Case No. A–98–04978, alleging, among other things, that the Beckers unlawfully converted the corporation's inventory and assets without the permission of the corporation's manager and chairman (*see* doc. 1). Games Galore obtained a temporary restraining order against the Beckers requiring them to return all of the corporation's inventory and assets immediately, which restraining order and injunction the Beckers allegedly ignored (*Id.*).

Thereafter, the Hamilton County Court of Common Pleas found the Beckers in contempt of the court's orders and fined them for violating its restraining order and injunction, which order of contempt and fines the Beckers allegedly further ignored (*Id.*). On August 16, 2000, Hamilton County Judge David P. Davis entered his Final Judgment Entry against the Beckers and in favor of Games Galore, finding that the Beckers were liable for unlawful conversion of the corporation's inventory and assets in the amount of $40,000.00 (*Id.*, Ex. A). Judge Davis further found that the Beckers committed such acts of conversion "intentionally and with utter disregard" for the rights of Game Galore and awarded the corporation an additional $7,500.00 in punitive damages (*Id.*).

On August 25, 2000, Plaintiff Games Galore of Ohio, Inc. filed a Complaint in this Court charging Defendants Christopher Masminster, Colerain Township, and the City of Cincinnati with federal civil rights violations and a common law conversion claim, requesting damages in the amount of $40,000 against all Defendants, jointly and severally, an award of costs, attorney fees, and all other legal and equitable relief to which Plaintiff is entitled to receive (doc. 1). Defendants filed separate Answers to the Complaint asserting general denials to the charges asserted against them, and countering with several affirmative defenses rebutting the charges that were asserted in the Complaint (docs. 2, 5 & 6).

In addition, on February 1, 2001, Defendant City of Cincinnati filed a Motion for Judgment on the Pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, moving this Court to dismiss the charges against them due to Plaintiff's failure to state a claim against Defendant City of Cincinnati ("Defendant") upon which relief can be granted (doc. 9). Shortly thereafter, Plaintiff Games Galore ("Plaintiff") filed its Response (doc. 13), followed by Defendant's Reply (doc. 14).

This matter is now ripe for the Court's consideration of Defendant's Motion to Dismiss (doc. 9).

## STANDARD OF REVIEW

This matter is before the Court on a Rule 12(c) motion for judgment on the pleadings. Rule 12(c) provides, in pertinent part, that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings ." Fed.R.Civ.P. 12(c). A Rule 12(c) motion is judged under the same standard of review as a 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. Fed.R.Civ.P. 12(b)(6).

█ The basic federal pleading requirement is contained in Federal Rule of Civil Procedure 8(a), which states that a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court examines a complaint in light of the objectives of Rule 8 and accepts as true all factual allegations in the complaint *Jones v. Sherrill*, 827 F.2d 1102, 1103 (6th Cir. 1987); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983).

The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Conley*, 355 U.S. at 47, 78 S.Ct. 99. The admonishment to liberally construe a plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions or legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations reflecting all of the material elements in order to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984); *In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir.1981); *see also Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); Wright, Miller & Cooper, Federal Practice and Procedure: § 1216 at 121–23.

The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

[W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988). Finally, we must remember that, in its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## DISCUSSION

### A. *Count III, The § 1983 Claim Against Defendant.*

In Count III of its Complaint, Plaintiff alleges the following charges against Defendant City of Cincinnati:

The City of Cincinnati Police Department protected, aided, and abetted the Beckers and the defendant Masminster, and colluded and conspired with them, to unlawfully convert the plaintiff's business inventory and assets.

The City of Cincinnati Police Department protected, aided, and abetted the Beckers and the defendant Masminster, and colluded with them, as a "professional courtesy" to Masminster, a fellow police officer.

In furtherance of the City of Cincinnati Police Department's efforts to protect, aid, and abet the Beckers and the defendant Masminster, and to collude and conspire with them, the City of Cincinnati Police Department failed and refused to take any action against them for their patently wrongful conduct, en-

abling the Beckers to remove the plaintiff's inventory and assets from the place where they initially stored it, and disposed of it for their own use and benefit. The City of Cincinnati Police Department, under color of law and as a "professional courtesy" to defendant Masminster, thus protected, aided, and abetted the Beckers and the defendant Masminster in their acts of unlawful conversion of the plaintiff's business assets and inventory.

The City of Cincinnati Police Department's conduct thus deprived the plaintiff of its Constitutionally protected rights under color of law in violation of 42 U.S.C. § 1983.

As a direct and proximate result of the City of Cincinnati Police Department's violation of 42 U.S.C. § 1983, the plaintiff has been damaged in the amount of $40,000.00, as already determined by the Common Pleas Court of Hamilton County, Ohio.

(doc. 1).

In its Motion to Dismiss, Defendant asserts that Count III of Plaintiff's Complaint "noticeably and understandably lacks any allegation that the City had an unconstitutional official policy or custom and also fails to adequately plead that the plaintiff was deprived of a constitutional right" (doc. 9). In addition, Defendant asserts that, without sufficient good faith allegations demonstrating the existence of a particular policy or custom with the force of law, the Complaint fails to state a § 1983 claim against Defendant upon which relief can be granted (*Id.*). Finally, Defendant argues that, since the City of Cincinnati was not present during the removal of the Plaintiff's personal property, Defendant has not violated Plaintiff's civil rights (doc. 14).

Title 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*

■ To establish a claim under § 1983, two elements are required: (1) conduct committed by a person acting under the color of state law that (2) deprives plaintiffs of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Sargi v. Kent City Board of Educ.,* 70 F.3d 907, 913 (6th Cir.1995).

■ While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees. *See Monell v. Department of Soc. Serv. of the City of New York,* 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[T]o satisfy the *Monell* requirements[,] a plaintiff must identify the policy, connect the policy to the city itself, and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993) (quoting *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir.1987)). Therefore, in order to state a claim against a city or county under § 1983, a plaintiff must show that his injury was caused by an unconstitutional "policy" or "custom" of the municipality. *See Pembaur v. City of Cincinna-*

*ti,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

 In other words, a plaintiff must show that the government entity itself is the wrongdoer. *Collins v. Harker Heights,* 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Governmental defendants may not be found liable unless a plaintiff can establish that an officially executed policy, or the tolerance of a custom, leads to, causes, or results in the deprivation of a constitutionally protected right. *Id.* An act performed pursuant to a "custom" not formally approved by an appropriate decision maker, may subject a government entity to liability on the theory that the relevant practice is so widespread as to have the force of law. *Board of County Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). To show the existence of an offending custom or policy, plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient. *Taylor v. Canton Police Dep't,* 544 F.Supp. 783 (N.D.Ohio 1982).

 The plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown,* 520 U.S. at 404, 117 S.Ct. 1382. Furthermore, a plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond. *City of Canton v. Harris,* 489 U.S. 378, 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

 A showing of simple or even heightened negligence will not suffice. *Brown,* 520 U.S. at 397, 117 S.Ct. 1382 (quoting *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his ac-

tion." *Brown,* 520 U.S. at 397, 117 S.Ct. 1382. Specifically, the risk of a constitutional violation arising as a result of the inadequacies in the municipal policy must be "plainly obvious." *Id.* at 397, 117 S.Ct. 1382. Furthermore, however, the Supreme Court held that, "the inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton,* 489 U.S. at 388, 109 S.Ct. 1197. The Court declared that, "[o]nly where a failure to train reflects a deliberate or conscious choice by a municipality—a policy as defined by our prior cases—can a city be liable for such a failure under section 1983." *Id.* at 389, 109 S.Ct. 1197.

The Supreme Court indicated at least two types of situations that would justify a conclusion of deliberate indifference in the failure to train police officers. One is failure to provide adequate training in light of foreseeable consequences that could result from the lack of instruction. *Id.* For example, the Court indicated that the lack of instruction in the use of firearms or in the use of deadly force could constitute "deliberate indifference." *Id.* at 390, 109 S.Ct. 1197. A second type of situation justifying a conclusion of deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers. *Id.*

 In the case at bar, the claimed constitutional basis for liability is the Due Process Clause of the Fourteenth Amendment, which provides that, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." In general, state officials are not constitutionally obligated to protect members of the public at large from crime. *See DeShaney v. Winnebago County of Dep't of Soc. Servs.,* 489 U.S. 189, 195–97,

109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Martinez v. California*, 444 U.S. 277, 284–85, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 700 (9th Cir.1990); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982); *Was v. Young*, 796 F.Supp. 1041, 1045 (E.D.Mich.1992).

■ This is because "the Constitution is a charter of negative liberties; it tells the State to let people alone; it does not require the federal government or the State to provide services; even so elementary as maintaining law and order." *Bowers*, 686 F.2d at 618. The Supreme Court has observed:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.... As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*DeShaney*, 489 U.S. at 195–197, 109 S.Ct. 998 (internal citations omitted).

In other words, "the due process clause is not usually implicated by government inaction, but rather by government action." *Was*, 796 F.Supp. at 1045. Thus, the most frequent situation in which a constitutional deprivation occurs is when a state official himself takes an affirmative action to violate the protected right. *See, e.g., Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (finding, for example, when local law enforcement officials themselves beat a citizen to death, those officials took an affirmative action to violate that citizen's constitutional rights).

■ Having reviewed this matter, the Court finds that Plaintiff's factual allegations, as described in Count III of the Complaint, does assert a claim against Defendant City of Cincinnati upon which relief can be granted (*see* doc. 1). *See also* Fed.R.Civ.P. 12(b)(6) & (c). We further find that, when Plaintiff's facts are viewed in a light most favorable to it, Plaintiff may be able to overcome the heavy burdens imposed on it when suing a municipal-defendant, by such cases as *Monell* and *DeShaney*.

In addition, the Court finds that it would be premature and unfair, at this early stage of the litigation, to hold as a matter of law that Plaintiff would be unable to prove the facts as alleged in the Complaint, given the fact that Plaintiff had before it a minimum of 8 months of discovery to complete before the period of discovery would end in this case (*see* doc. 9). During this time period, Plaintiff may be able to discover enough evidence in an effort to bolster its assertions of an unconstitutional policy, custom, or deliberate indifference on the part of Defendant.

Ordinarily, a complaint is sufficient if it contains "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). We find that Count III of Plaintiff's Complaint meets this standard (*see* doc. 1).

To require more would defeat the purpose of the notice pleading requirement and would result in the use of a higher pleading standard for section 1983 complaints. *See* Fed.R.Civ.P. 8(a). The Unit-

ed States Supreme Court has expressly rejected a requirement of a heightened pleading standard in § 1983 actions against municipalities. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

We find that Plaintiff's allegations of "professional courtesy" that was extended to Officer Masminster by the Cincinnati Police Department sufficiently identifies a possible unconstitutional policy or custom of Defendant in this case, and thus, is sufficient for "notice pleading." *See* Fed. R.Civ.P. 8. Therefore, the Complaint in this case is not inadequate for its failure to include factual or evidentiary detail best left to the discovery process. Finally, we find that Defendant will not be unduly burdened by our ruling in this matter, because at the conclusion of the discovery period, Defendant may submit a motion for summary judgment in a renewed effort to dismiss Plaintiff's § 1983 claim. Accordingly, Defendant City of Cincinnati's Motion to Dismiss Count III of the Complaint is hereby DENIED.

### B. *Count VI, The Conversion Claim Against Defendant.*

■ In Count III of its Complaint, Plaintiff alleges the following common law charges against Defendant City of Cincinnati:

> The City of Cincinnati Police Division, through its officers *acting in the scope of their employment, protected, aided, and abetted the Beckers and the defendant Masminster, and colluded and conspired with them, to unlawfully convert the plaintiff's business inventory and assets.*
>
> The City of Cincinnati Police Division, through its officers acting within the scope of their employment, protected, aided, and abetted the Beckers and the defendant Masminster, and colluded and

conspired with them, as a "professional courtesy" to Masminster, a fellow police officer.

> In furtherance of the City of Cincinnati Police Division's efforts to protect, aid, and abet the Beckers and the defendant Masminster, and to collude and conspire with them, the City of Cincinnati Police Division, through its officers acting within the scope of their employment, failed and refused to accept or investigate the plaintiff's proffered charges of theft against the Beckers, and failed and refused to take any action against them for their patently wrongful conduct, thus enabling the Beckers to remove the plaintiff's inventory and assets from the place where they initially stored it, and dispose of it for their own use and benefit.
>
> The conduct of the City of Cincinnati Police Division in protecting, aiding, and abetting the Beckers and the defendant Masminster was committed by its officers acting within the scope of their employment with malicious purpose, in bad faith, or in a wanton or reckless manner.
>
> As a direct and proximate result of the City of Cincinnati Police Division's conduct the plaintiff has been damaged in the amount of $40,000.00, as already determined by the Court of Common Pleas for Hamilton County, Ohio.

(doc. 1) (emphasis added).

In its Motion to Dismiss, Defendant City of Cincinnati asserts that Plaintiff's Complaint failed to state a tort claim against Defendant upon which relief can be granted (doc. 9). *See* Fed.R.Civ.P. 12(b)(6) & (c). In addition, Defendant asserts that a municipal entity, such as the City of Cincinnati, has immunity from suit related to Plaintiff's alleged state tort claim, pursuant to Ohio Revised Code § 2744 (*Id.*).

Furthermore, Defendant argues that, even assuming the truth of the allegations in the Complaint, those allegations do not plead a violation of a constitutional right or the commission of a tort for which Defendant can be liable and over which this Court may assert jurisdiction (*Id.*). Finally, Defendant concludes its arguments by stating that, since Plaintiff has a state court judgment against the individual owners who removed its property, Plaintiff is barred, thereafter, from further litigating that common law claim against Defendant in another common law action in federal court (*Id*).

Federal courts have discretion to decide pendent state law claims if the federal and state claims "arise out of a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, "[i]f the federal claims are dismissed before trial ... the state claim[s] should be dismissed as well." *Webb v. McCullough*, 828 F.2d 1151, 1160 (6th Cir.1987) (quoting *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130).

Having reviewed this matter, the Court DECLINES pendent jurisdiction over the common law conversion claim in this case due to the fact that it appears to be repetitive with the § 1983 claim; Plaintiff has already received a substantial and final state court judgment on this claim against the Beckers; and because it is likely that Defendant City of Cincinnati may have an adequate immunity defense against Plaintiff's common law conversion claim.

## CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant City of Cincinnati's Motion for Dismiss (doc. 9). However, we DECLINE to accept pendent jurisdiction of Plaintiff's conversion claim. Accordingly, Count VI of Plaintiff's Complaint is hereby DISMISSED WITHOUT PREJUDICE (doc. 1).

SO ORDERED.